Opinion issued April 6, 2006








     



In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00697-CV




WILLIE ASHTON JR., Appellant

V.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE–INSTITUTIONAL
DIVISION, Appellee




On Appeal from the 23rd District Court
Brazoria County, Texas
Trial Court Cause No. 25959




MEMORANDUM OPINION

          Appellant, Willie Ashton Jr., appeals from the trial court’s judgment dismissing
his personal-injury lawsuit against appellee, Texas Department of Criminal
Justice–Institutional Division (“TDCJ–ID”), pursuant to Chapter 14 of the Texas Civil
Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. § 14.001–.014
(Vernon 2002). We determine whether the misnomer doctrine or the misidentification
doctrine allowed appellant to assert his claims against TDCJ–ID, despite limitations’
undisputedly having run before the filing of his lawsuit. Answering that question in
the negative, we affirm. 
Factual Background

          Ashton was an inmate at TDCJ–ID. On July 16, 1998, Ashton sued a nurse,
Kay Scott, and a doctor, Larry Lispcomb, both of whom had treated him during his
incarceration, alleging that they had injured him by having negligently applied acid
to a wart on his forehead (“the 1998 lawsuit”). See Ashton v. Tex. Dep’t of Crim.
Justice Sys., No. 01-98-01107-CV, 2000 WL 1714799, at *1 (Tex. App.—Houston
[1st Dist.] Nov. 2, 2000, no pet.) (not designated for publication). It is undisputed that
the acts underlying the 1998 lawsuit occurred on or around August 21, 1996. Ashton
also named TDCJ–ID as a party defendant, but did not seek service of process on it
through its executive director. See id. at *4. His petition, however, urged claims that
could have been brought only against a governmental-entity defendant. See id. The
trial court dismissed the 1998 lawsuit on its own motion under Civil Practice and
Remedies Code chapter 14. See id. at *1, 2. On appeal, this Court affirmed the
dismissal, after having modified the judgment to indicate that the dismissal was
without prejudice, for the reason that Ashton had sued individual defendants against
whom his governmental-entity claims could not be asserted. See id. at 4.
          Ashton then sued TDCJ–ID on September 18, 2003 (“the 2003 lawsuit”), again
asserting the same negligence claims. The petition in the 2003 lawsuit also named
Scott as a defendant, although it was unclear whether she was sued in her individual
or official capacity.


 Upon the motion of the Texas Attorney General, acting as friend
of the court, the trial court dismissed the 2003 lawsuit pursuant to chapter 14, without
stating the basis for its ruling. Ashton appealed. Appellees have not filed a brief.
Standard of Review
          We review a chapter 14 dismissal for abuse of discretion. Moreland v. Johnson,
95 S.W.3d 392, 394 (Tex. App.—Houston [1st Dist.] 2002, no pet.). That is, we will
reverse the trial court only if it acted without reference to any guiding rules or
principles. See id.
Dismissal of Ashton’s Claims
          In his sole point of error, Ashton raises three arguments. First, he argues that
the trial court did not hold an evidentiary hearing. Second, he complains that the trial
court did not specify in the order why the suit was frivolous. Third, he argues that the
trial court should not have dismissed the 2003 lawsuit on the basis that the claims had
no arguable basis in law or fact. See Tex. Civ. Prac. & Rem. Code Ann. § 14.003
(Vernon 2002). This Court has already disposed of Ashton’s first two arguments in
the opinion on appeal in the 1998 lawsuit, and we again overrule them for the reasons
stated in our prior opinion. See Ashton, 2000 WL 1714799, at *4–5. Accordingly, we
write here only on Ashton’s third argument.
          A trial court may dismiss a claim under section 14.003 if, among other things,
the court concludes that the claim is frivolous or malicious. See Tex. Civ. Prac. &
Rem. Code Ann. § 14.003(a)(2) (Vernon 2002); Rayford v. Masselli, 73 S.W.3d 410,
422 (Tex. App.—Houston [1st Dist.] 2002, no pet.). However, “[w]hen the trial court
dismisses a claim without a hearing, the issue on appeal is whether the claim had no
arguable basis in law.” Moreland, 95 S.W.3d at 394. 
          The Attorney General’s motion to dismiss requested dismissal under section
14.003(a)(2) because limitations had run. As a general rule, “[a] cause of action
accrues, and the statute of limitations begins to run, when facts come into existence
that authorize a claimant to seek a judicial remedy.” Johnson & Higgins of Texas, Inc.
v. Kenneco Energy, Inc., 962 S.W.2d 507, 514 (Tex. 1998). The allegations in
Ashton’s petition in the 2003 lawsuit show that his cause of action arose on or about
August 21, 1996.
          The statute of limitations for personal-injury claims like Ashton’s is two years. 
See Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). As a matter of law, that period
expired on August 21, 1998 or very soon thereafter.


 Ashton’s having mistakenly sued
incorrect defendants within the limitations period in the 1998 lawsuit did not toll
limitations on those same claims when they were later asserted against the correct
defendant after final judgment in the 1998 lawsuit and more than two years after the
occurrence. See Ensearch Corp. v. Parker, 794 S.W.2d 2, 5 (Tex. 1990) (explaining
that such misidentification of defendant generally does not toll limitations); see also
Bailey v. Vanscot Concrete Co., 894 S.W.2d 757, 761 (Tex. 1995) (holding that, when
plaintiff initially sues incorrect defendant, plaintiff must amend petition to add correct
defendant some time before judgment in order for claim against correct defendant to
have chance of relating back to date of suit’s filing; further holding, “This court
declines to correct [the plaintiff’s] error [in suing incorrect defendant] by retroactively
substituting in the correct party on his behalf.”), disapproved on other grounds by
Chilkewitz v. Hyson, 22 S.W.3d 825, 830 (Tex. 1999). Therefore, the 1998 lawsuit’s
prosecution did not toll or restart the statute of limitations for the current claims
against TDCJ–ID. As a result, the 2003 lawsuit was filed over five years after
limitations had run.
          In response, Ashton relies on Price v. Estate of Anderson, in which the Texas
Supreme Court recognized the “misnomer” rule, in which “the statute of limitations
is interrupted by institution of suit against the intended defendant under an incorrect
name, provided the true defendant is not misled but appears and has an opportunity to
defend the suit before the statute of limitations has run.” 522 S.W.2d 690, 691 (Tex.
1972). The court elaborated:
Various reasons have been given for the holdings in the misnomer cases. 
The courts have spoken of waiver, estoppel, mistake not discoverable in
the exercise of reasonable diligence, and relation back of the amended
petition in which the defendant is correctly named.
Id. at 692. Relying on Price and on the misnomer line of cases, Ashton argues that his
suing Scott and Lipscomb individually in 1998 in his first lawsuit invoked this rule,
allowing him now, in a totally separate lawsuit, to sue TDCJ–ID long after limitations
has run.
          This line of authority does not avail Ashton. The misnomer rule is intended to
allow relation back, for limitations purposes, within the same lawsuit. That was the
situation in Price, in which the correct defendant was added during the lawsuit, but
after limitations had run. See id. That is not, however, the situation here: here, Ashton
has brought an independent lawsuit, which he instituted after the judgment in the first
lawsuit was affirmed, without remand, by this Court. See Ashton, 2000 WL 1714799,
at *5. Our having modified the judgment in the first suit to dismiss the cause without
prejudice, before having affirmed that judgment, did not restart the limitations period. 
Cf. Taylor, 4 S.W.3d at 65 (holding that “[t]he filing of the lawsuit alone does not
interrupt the running of limitations.”).
          The same reasoning applies to the extent that Ashton bases his appellate
challenges on the related “misidentification” line of authority. “Texas courts have
recognized a distinction between misnomer and misidentification. If the plaintiff
merely misnames the correct defendant (misnomer), limitations is tolled and a
subsequent amendment of the petition relates back to the date of the original petition. 
If, however, the plaintiff is mistaken as to which of two defendants is the correct one
and there is actually existing a corporation with the name of the erroneously named
defendant (misidentification), then the plaintiff has sued the wrong party and
limitations is not tolled.” Parker, 794 S.W.2d at 4–5. However, Ashton relies on
Wright v. Texas Department of Criminal Justice–Institutional Division for an
exception to this rule: “limitations may be tolled when a plaintiff sues an incorrect
entity if (1) there are two separate but related entities that use a similar trade name, (2)
the correct entity had notice of the suit, and (3) was not misled or disadvantaged by
the mistake.” Id., 68 S.W.3d 788, 791 (Tex. App.—Houston [14th Dist.] 2001, no
pet.). In Wright, however, the plaintiff had added the correct defendant (TDCJ–ID)
before final judgment, but after limitations had run; the Wright court held that the
timely suing of TDCJ–ID’s then director, when TDCJ–ID was not misled or
prejudiced and knew that it was the intended defendant, allowed the later amended
petition naming TDCJ–ID to relate back to the original petition’s filing date. Id. This
is, as noted above, not the situation here, in which the individuals sued were not
TDCJ–ID’s executive directors (and were thus not authorized to receive service for
it) and when TDCJ–ID was not added before final judgment. See Bailey, 894 S.W.2d
at 761.
          Moreover, it is unclear from the record before us and from our earlier opinion
whether, in the 1998 lawsuit, TDCJ–ID or any defendant filed an answer or
participated to any significant extent before the suit was dismissed. See Ashton, 2000
WL 1714799 at *1 (indicating that trial court dismissed suit sua sponte; also indicating
that defendants did not file brief in appellate court). In Price, in contrast, “[t]he
purpose of the suit and the nature of the claim asserted were clear from the outset,”
and the defendant, who was the estate’s temporary administrator (and thus the proper
defendant, rather than the “estate,” which was the entity originally sued) “answered
for the ‘estate’ and participated in all proceedings affecting the case.”


 Price, 522
S.W.2d at 692. Similarly, in Wright, the improper defendant was TDCJ–ID’s then
director; nothing indicated that TDCJ–ID was misled or prejudiced by the misnaming
of its former director; the former director’s answer never asserted that TDCJ–ID
should have been sued instead; and the suit progressed sufficiently enough (over four
years) for the former director to move to dismiss the suit for want of prosecution, for
the defendants to file jurisdictional pleas, and for the case to be called to trial. See
Wright, 68 S.W.3d at 790, 791 & n.2. The factual context of Price and Wright is
important because “[t]he primary purpose of a statute of limitations is to compel the
exercise of a right of action within a reasonable time so that the opposing party has a
fair opportunity to defend while witnesses are available and the evidence is fresh in
their minds.” Price, 522 S.W.2d at 692. If the individual defendants in the first
lawsuit did not have that opportunity—and the current record does not show if they
did and implies that they did not, given the procedurally early dismissal—we cannot
conclude that the trial court abused its discretion if it implicitly determined that
limitations was not tolled under the misnomer or misidentification doctrine—even
assuming that those doctrines could somehow apply outside of the same lawsuit.
          Ashton alternatively argues that his having sued the wrong parties in the first
lawsuit was the result of his not having had legal training. However, “[p]ro se litigants
are held to the same standards as licensed attorneys and must comply with all
applicable laws and rules of procedure.” Hope’s Fin. Mgt. v. Chase Manhattan
Mortgage Corp., 172 S.W.3d 105, 107 (Tex. App.—Dallas 2005, pet. denied).
          For these reasons, we overrule Ashton’s sole point of error.
 

Conclusion
          We affirm the judgment of the trial court.
 
 
 
                                                             Tim Taft
                                                             Justice
 
Panel consists of Justices Taft, Higley, and Bland.